# WARD COUNTY, a Political Subdivision of the State of North Dakota, and a Public Corporation Organized and Existing under the Laws of the State of North Dakota, v. E. G. WARREN.

(155 N. W. 658.)

Action by county against superintendent of schools to recover overcharge of mileage. It is conceded that plaintiff must show that defendant collected for mileage that was not actually and necessarily traveled in the performance of his duties.

**Superintendent of schools — county — mileage — overcharge — offers of proof — distances — actual and necessary travel — visiting schools.**

1. (a) It was shown by the bills filed against Ward county that plaintiff collected mileage amounting to 5,703 miles for visiting school district No. 102. Plaintiff then sought to show by the clerk of the district court that the ordinary and usual road to Minot traveled by the residents of that vicinity was only about 17 miles. This testimony was supplemented by offers to prove that, during the time for which said mileage was charged, that defendant and his deputies were constantly traveling around the country visiting schools in an automobile, and that the bills filed showed charges from Minot to Drake and Plaza by railroad and thence by team to the district which lay about half way between Minot and Plaza. The rejection of this evidence was reversible error. If road conditions, weather, or other circumstances necessitated the extra mileage, the explanation rested with the defendant.

**Mileage — charged for travel in visiting schools — must be actually and necessarily traveled — constructive mileage — evidence — competent.**

(b) Plaintiff offered to show the distance from the various schools to Minot by the longest route necessarily, usually, and ordinarily traveled between such points during the period for which the charges were made. Also that more than 300 visits for which charges had been made from Minot to Drake, Plaza, etc., had in truth and fact been made overland from Minot. Also that the longest route necessarily, usually, and ordinarily traveled between schools to the city of Minot was less than the mileage charged by the defendant by from 20 to 210 miles per district. Also to prove by the deputy superintendents of schools that defendant in computing mileage employed constructive mileage rather than the actual mileage charged. Also that during the period covered by the action, and without loss to the efficiency of the school administration of the county, that defendant or his deputies could have visited seven or more schools on each trip before returning to the city of Minot, and by traveling the distance from the schools visited to the nearest railway station or town and from there to other schools. Plaintiff should have been allowed to prove the first four of those if it could do so by competent evidence.

**Special school districts — independent — superintendents — visits to schools — mileage collected — evidence — competent.**

(c) It was material for plaintiff to show that Kenmare, Ryder, and Berthhold were special school districts employing superintendents of their own. Such evidence was admissible even though defendant had certain duties which necessitated visits to those schools. The fact of their independent organization should be taken into consideration by the jury in determining whether or not defendant actually made the visits for which he collected mileage, and whether such mileage was necessarily traveled.

**Cross-examination — mileage — method of computation.**

(d) Plaintiff should have been allowed to cross-examine the defendant as to the manner in which mileage was figured in the presentation of his bills.

**Cross-examination — witnesses — recollection — memory — refreshing.**

(e) Plaintiff should have been allowed to examine the witness Peterson as to his recollection of certain visits made by him, and he should have been allowed to examine exhibit 29 to refresh his memory.

**Visits to schools — automobile — distance necessarily traveled.**

(f) Plaintiff should have been allowed to examine the witness Peterson as to whether or not a great many of the trips for which mileage had been charged by Drake and Ryder were in fact made by automobile directly from Minot.

**Custom of chauffeur — automobile — route of travel — in visits — schools.**

(g) Plaintiff should have been allowed to examine the chauffeur fully as to his custom in taking defendant and his deputies to the various school districts during the time for which mileage was charged by Drake, Ryder, etc.

**Temporary records — showing method of travel — routes taken — destruction of — after suit brought — competent evidence.**

(h) Plaintiff should have been allowed to prove, if it could, that defendant had destroyed his temporary records after the commencement of this action.

**Verdict — direction of — superintendent of schools — constructive mileage charged — instructions by — to his deputies — bills — false — inaccurate — error.**

2. The trial court at the close of the testimony, directed a verdict in favor of the defendant upon the first cause of action. At that time there was evidence from which the jury might have found that defendant had given directions to his deputies to charge constructive mileage around by Drake and Ryder when, in fact, the said mileage was made by a much shorter route; that during all of this time defendant and his deputies were constantly traveling by automobile, visiting many schools in a day. That the bills presented by the defendant were false and grossly inaccurate in that they did not always show the true mileage, the true date of the visit, nor even the name of the deputy who actually made the visit. There is evidence that many of the districts lying less than 40 miles

from the city of Minot were charged with mileage from 5,000 to 10,581 miles for a district. Under those circumstances it was error to take the case from the jury.

**Costs — in trial court — taxation of — reversal.**

3. In view of the reversal of this case it is unnecessary to pass upon the question of the taxation of costs in the trial below.

Opinion filed November 16, 1915.

Appeal from the District Court of Ward County, *Leighton,* **J.**
Reversed.

*R. A. Nestos,* State's Attorney, and *Dorr Carroll,* Assistant State's Attorney, for appellant.

The defendant was practising a fraud upon plaintiff in presenting his bills of overcharge and collecting same, and the money paid him under these circumstances rendered him a trustee *de son tort* or a trustee *ex maleficio.* 8 Words & Phrases, p. 7134.

Equity impresses upon such money a constructive trust in favor of the one entitled to the same. Parrish v. Parrish, 33 Or. 486, 54 Pac. 352, Citing 2 Pom. Eq. Jur. § 1053; Brown v. Brown, 83 Hun, 160, 31 N. Y. Supp. 650; 38 Cyc. 2021; Lovell v. Hammond Co. 66 Conn. 500, 34 Atl. 511; Thomson v. Gortner, 73 Md. 474, 21 Atl. 371; Devlin v. Houghton, 202 Mass. 75, 88 N. E. 580; Heineman v. Steiger, 54 Mich. 232, 19 N. W. 965; Norman v. Eckern, 60 Minn. 531, 63 N. W. 170; Holland v. Bishop, 60 Minn. 23, 61 N. W. 681; Smith v. Zink, 81 Mo. App. 347; Stahl v. Dohrman, 23 Misc. 461, 51 N. Y. Supp. 396; Harris v. Lyon, 1 N. Y. City Ct. Rep. 450; Woodworth v. Kissam, 15 Johns. 186; Sheppard v. Shoolbred, 1 Car. & M. 61; Brown v. Doane, 86 Ga. 32, 11 L.R.A. 381, 12 S. E. 179; Hidden v. Jordan, 21 Cal. 92; Sandfoss v. Jones, 35 Cal. 481; Cameron v. Ward, 8 Ga. 245; Arnold v. Cord, 16 Ind. 177; Nelson v. Worrall, 20 Iowa, 469; Green v. Ball, 4 Bush, 586; Moore v. Tisdale, 5 B. Mon. 352; Martin v. Martin, 16 B. Mon. 8; Farnham v. Clements, 51 Me. 426; Hunt v. Roberts, 40 Me. 187; Laing v. McKee, 13 Mich. 124, 87 Am. Dec. 738; Jones v. M'Dougal, 32 Miss. 179; Dodd v. Wakeman, 26 N. J. Eq. 484; Rose v. Bates, 12 Mo. 30; Schmidt v. Gatewood, 2 Rich. Eq. 162; Fraser v. Child, 4 E. D. Smith, 153; Cousins v. Wall, 56 N. C. (3 Jones, Eq.) 43; Coyote Gold & S. Min. Co. v. Ruble, 8 Or. 284, 4 Mor.

32 N. D.—6.

Min. Rep. 88; Troll v. Carter, 15 W. Va. 567; Coyle v. Davis, 20 Wis. 564; Hoge v. Hoge, 1 Watts, 163, 26 Am. Dec. 52; Hodges & Co. v. Howard, 5 R. I. 149; M'Cullough v. Cowher, 5 Watts & S. 427; Kisler v. Kisler, 2 Watts, 323, 27 Am. Dec. 308; Wolford v. Herrington, 86 Pa. 39; Wheeler v. Reynolds, 66 N. Y. 227; Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Eley v. Miller, 7 Ind. App. 529, 34 N. E. 836.

Mingling such money with other funds does not divest the trust fund of its trust character. Van Alen v. American Nat. Bank, 52 N. Y. 1; Moses v. Murgatroyd, 1 Johns. Ch. 119, 7 Am. Dec. 478; Hopkin's Appeal, 7 Sadler (Pa.) 143, 9 Atl. 867.

A trustee is liable for trust money lost while mingled with his own, or while being used in his own business, no matter by what cause the loss occurs. Mumford v. Murray, 6 Johns. Ch. 1; De Jarnette v. De Jarnette, 41 Ala. 710; Heathcote v. Hulme, 1 Jac. & W. 122, 20 Revised Rep. 248; Mason v. Morley, 34 Beav. 471, 34 J. Ch. N. S. 422, 11 Jur. N. S. 459, 12 L. T. N. S. 414, 13 Week. Rep. 669; Frith v. Cartland, 2 Hem. & M. 417, 34 L. J. Ch. N. S. 301, 11 Jur. N. S. 238, 12 L. T. N. S. 175, 13 Week. Rep. 493; Pennell v. Deffell, 4 De G. M. & G. 372, 1 Eq. Rep. 579, 23 L. J. Ch. N. S. 115, 18 Jur. 273, 1 Week. Rep. 499; Ernest v. Croysdill, 2 De G. F. & J. 175; Ex Parte Geaves, 8 De G. M. & G. 291, 25 L. J. Bankr. N. S. 53, 2 Jur. N. S. 651, 4 Week. Rep. 536; Cook v. Addison, L. R. 7 Eq. 466, 38 L. J. Ch. N. S. 322, 20 L. T. N. S. 212, 17 Week. Rep. 480; Hart v. Ten Eyck, 2 Johns. Ch. 62; Case v. Abeel, 1 Paige, 393; Bobb v. Bobb, 89 Mo. 411, 4 S. W. 511; Schieffelin v. Stewart, 1 Johns. Ch. 620, 7 Am. Dec. 507; 2 Pom. Eq. 655; Utica Ins. Co. v. Lynch, 11 Paige, 520; Mumford v. Murray, 6 Johns. Ch. 1; Kip v. Bank of New York, 10 Johns. 63; Com. v. McAlister, 28 Pa. 486; Kellett v. Rathbun, 4 Paige, 102; Diffenderffer v. Winder, 3 Gill & J. 342; Jameson v. Shelby, 2 Humph. 198; West Branch Bank v. Fulmer, 3 Pa. 399, 45 Am. Dec. 651; McAllister v. Com. 30 Pa. 536; Royer's Appeal, 11 Pa. 36; Stanley's Appeal, 8 Pa. 431, 49 Am. Dec. 530; Matthew v. Brise, 6 Beav. 239; Macdonnell v. Harding, 7 Sim. 178, 4 L. J. Ch. N. S. 10; Freeman v. Fairlie, 3 Meriv. 38, 17 Revised Rep. 7; Wren v. Kirton, 11 Ves. Jr. 377; Massey v. Banner, 4 Madd. Ch. 413, 20 Revised Rep. 317; Fletcher v. Walker, 3 Madd. Ch. 73, 18 Revised Rep. 195; Rowth v. Howell, 3 Ves. Jr. 565; Verner's Estate, 6 Watts, 250; Peters v. Bain,

133 U. S. 670, 33 L. ed. 696, 10 Sup. Ct. Rep. 354; Brackenridge v. Holland, 2 Blackf. 383, 20 Am. Dec. 123; Jewett v. Dringer, 30 N. J. Eq. 308; Brakeley v. Tuttle, 3 W. Va. 126.

Interest thereon may be charged, either simple or compound, according to the facts. Re Commonwealth F. Ins. Co. 32 Hun, 79; Manning v. Manning, 1 Johns. Ch. 527; Schieffelin v. Stewart, 1 Johns. Ch. 620, 7 Am. Dec. 507; 3 Pom. Eq. Jur. § 1063.

When such funds are mixed with his own property, it is for him to distinguish his own, or lose it. Jewett v. Dringer, 30 N. J. Eq. 308; Lake Shore & M. S. R. Co. v. Hutchins, 37 Ohio St. 298; Kreuzer v. Cooney, 45 Md. 592; Wetherbee v. Green, 22 Mich. 318, 7 Am. Rep. 653; Moore v. Bowman, 47 N. H. 501; United States v. Thompson, 93 U. S. 586, 23 L. ed. 982; Diversey v. Johnson, 93 Ill. 569; Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693; First Nat. Bank v. Hummel, 14 Colo. 259, 8 L.R.A. 788, 20 Am. St. Rep. 257, 23 Pac. 986; Knatchbull v. Hallet, L. R. 13 Ch. Div. 696, 49 L. J. Ch. N. S. 415, 42 L. T. N. S. 421, 28 Week. Rep. 732, 36 Moak, Eng. Rep. 779, and cases there cited; Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 34 L. ed. 724, 11 Sup. Ct. Rep. 118; San Diego County v. California Nat. Bank, 52 Fed. 59; Thompson v. Gloucester, City Sav. Inst. — N. J. Eq.—, 8 Atl. 97; Smith v. Combs, 49 N. J. Eq. 420, 24 Atl. 9; McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214; Francis v. Evans, 69 Wis. 115, 33 N. W. 93; Bowers v. Evans, 71 Wis. 133, 36 N. W. 629; Independent Dist. v. King, 80 Iowa, 497, 45 N. W. 908; Davenport Plow Co. v. Lamp, 80 Iowa, 722, 20 Am. St. Rep. 442, 45 N. W. 1049; Harrison v. Smith, 83 Mo. 217, 53 Am. Rep. 571; Stoller v. Coates, 88 Mo. 520; Myers v. Board of Education, 51 Kan. 87, 37 Am. St. Rep. 263, 32 Pac. 658; Peak v. Ellicott, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; Ingraham v. Elliott, 30 Kan. 163; Continental Nat. Bank v. Weems, 69 Tex. 489, 5 Am. St. Rep. 85, 6 S. W. 802; Brocchus v. Morgan, 5 Cent. L. J. 53; 2 Lewin, Tr. & Trustees, 394, et seq.; Mechem, Agency, 526; Farmers' & T. Bank v. Kimball Mill. Co. 1 S. D. 388, 36 Am. St. Rep. 739, 47 N. W. 402.

"Discretion, when applied to a court of justice, means a sound discretion guided by law. It must be governed by rule, not by humor.

It must not be arbitrary, vague and fanciful, but legal and regular."
Rex v. Wilkes, 4 Burr. 2527; Harris v. Harris, 31 Gratt. 16; State
ex rel. Sea Isle City Improv. Co. v. Assessors of Taxes, 61 N. J. L.
476, 39 Atl. 1063; Lovinier v. Pearce, 70 N. C. 171; Miller v. Wal-
lace, 76 Ga. 484, 2 Am. St. Rep. 48; People ex rel. Oebricks v. Superior
Ct. 5 Wend. 114; Platt v. Munroe, 34 Barb. 291; Sharp v. Greene, 22
Wash. 677, 62 Pac. 147; Haupt v. Independent Teleg. Messenger Co.
25 Mont. 122, 63 Pac. 1033; State ex rel. Adamson v. Lafayette
County Ct. 41 Mo. 221; Ex parte Mackey, 15 S. C. 322; Abbott v.
L'Hommedieu, 10 W. Va. 677; Rose v. Brown, 11 W. Va. 123.

A cause should not be taken from the jury except for good and very
strong reasons. There must not be any evidence upon which the jury
could legally and rightfully base a verdict. Schuylkill & D. Improv.
Co. v. Munson, 14 Wall. 442, 20 L. ed. 867; Pleasants v. Fant, 22 Wall.
120, 22 L. ed. 782; Marion County v. Clark, 94 U. S. 284, 24 L. ed.
61; Griggs v. Houston, 104 U. S. 553, 26 L. ed. 840; Bagley v. Cleve-
land Rolling Mill Co. 22 Blatchf. 342, 21 Fed. 159; Wittkowsky v.
Wasson, 71 N. C. 451; Dwight v. Germania L. Ins. Co. 103 N. Y. 341,
57 Am. Rep. 729, 8 N. E. 654; Burke v. Witherbee, 98 N. Y. 562;
Culhane v. New York C. & H. R. R. Co. 60 N. Y. 136; McKeever v.
New York C. & H. R. R. Co. 88 N. Y. 667; Hyatt v. Johnston, 91 Pa.
200; Ryder v. Wombell, L. R. 4 Exch. 32, 38 L. J. Exch. N. S. 8,
19 L. T. N. S. 491, 17 Week. Rep. 167; Codding v. Wood, 112 Pa.
371, 3 Atl. 455; Note to Charon v. George W. Roby Lumber Co. 9
Western Rep. 591; Marcott v. Marquette, H. & O. R. Co. 47 Mich. 1,
10 N. W. 53; Detroit & M. R. Co. v. Van Steinburg, 17 Mich. 99;
Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. ed. 745.

If there is any evidence which in any way tends to prove a cause,
or a defense, it is error to take the case from the jury. Stephens v.
Brooks, 2 Bush, 137; Way v. Illinois C. R. Co. 35 Iowa, 585; Drakely
v. Gregg, 8 Wall. 242, 19 L. ed. 409; Henry v. Rich, 64 N. C. 379;
Hickman v. Jones, 9 Wall. 197, 19 L. ed. 551; Barney v. Schmeider, 9
Wall. 248, 19 L. ed. 648; Kelsey v. Northern Light Oil Co. 45 N. Y.
505, 13 Mor. Min. Rep. 497; Humiston v. Wood, 124 U. S. 12, 31 L.
ed. 354, 8 Sup. Ct. Rep. 347; Marble v. Mellen, 145 Mass. 342, 14
N. E. 110; Hickman v. Cruise, 72 Iowa, 528, 2 Am. St. Rep. 256, 34
N. W. 316; Ross v. State, 82 Ala. 65, 2 So. 139; 24 Cyc. 193; Olson

v. Riddle, 22 N. D. 144, 132 N. W. 655; John Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164; Gooler v. Eidsness, 18 N. D. 338, 121 N. W. 83.

A controverted fact should never be taken from the jury where there is reasonable doubt as to the state of the evidence. Slattery v. Donnelly, 1 N. D. 264, 47 N. W. 375; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; McRea v. Hillsboro Nat. Bank, 6 N. D. 353, 70 N. W. 813; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Warnken v. Langdon Mercantile Co. 8 N. D. 243, 77 N. W. 1000; Pewonka v. Stewart, 13 N. D. 117, 99 N. W. 1080, 16 Am. Neg. Rep. 540.

In taxing costs the rule is well settled that there can be no apportionment, although both parties be successful in part, unless the statute so permits.

The party who obtains a judgment, even though in part only, for the relief demanded, is the prevailing party, and is entitled to costs. 11 Cyc. 28, and cases cited; New Marlborough v. Brewer, 170 Mass. 162, 48 N. E. 1089; Fowler v. Shearer, 7 Mass. 14; Fox v. Hale & N. Silver Min. Co. 122 Cal. 219, 54 Pac. 731.

*Greenleaf, Bradford, & Nash,* for respondent.

Where a declaration contains several counts for separate and distinct causes of action, on some of which plaintiff recovers, but on the others defendant is successful, each party is entitled to recover the costs incident to the counts on which he prevails. 5 Enc. Pl. & Pr. 143, 144; Allison v. Thompson, 2 Swan, 202; Boothe v. Cowan, 5 Sneed, 354; Acker v. McCullough, 50 Ind. 447; Litchfield v. Farmington, 7 Conn. 399; Sayles v. Briggs, 1 Met. 291; Meacham v. Johes, 10 N. H. 126.

Burke, J. Defendant was the county superintendent of schools of Ward county, and as such was entitled to charge said county, in addition to his salary, 10 cents for each mile actually and necessarily traveled by himself and his deputies in the performance of their duties. From the 1st of August, 1910, to the 7th of January, 1913, defendant presented to the county commissioners of said county for audit and payment, mileage bills totaling 176,375 miles, for which he was paid the sum of $17,667.50.

This action is brought by the county upon two counts. Under the first it is alleged that defendant overcharged the county in the sum of

$11,817.50, because 118,175 miles were not actually and necessarily traveled. The second cause of action alleges that said defendant received various moneys belonging to the county of Ward which he had not deposited with the treasurer promptly, but held for his own personal use an unreasonable time. Under this count interest in the sum of $384 was demanded. Upon the trial defendant conceded that if he had received money from the county for which there was no corresponding actual and necessary travel, the county could recover, but insisted that each and every mile for which a charge had been made was not only actually traveled, but a necessity had existed for the exact mileage made. Plaintiff offered in evidence much testimony, and many of the assignments of error relate to the refusal of the trial court to allow this testimony to go to the jury. At the close of the trial below the trial court directed the jury to return a verdict in favor of the defendant upon this first count. This ruling of the trial court is assigned as error. The second count of the complaint was submitted to the jury, which returned a verdict in favor of the county in the full amount demanded. Plaintiff, thereupon, taxed as costs the witness fees of all of his witnesses, both those used upon the first count and those used upon the second count. Upon relaxation the court, however, receded from this position and allowed the costs only upon the second cause.

To keep this opinion within printable limits, we can give only the briefest extracts from the testimony. The bill of particulars furnished by the plaintiff to defendant alone covers 92 pages of the printed abstract, containing something like 2,000 items covering something over 118,000 miles of travel.

(1) This paragraph will be devoted to the question of whether or not testimony properly admissible was rejected by the trial court.

(a) We will consider under this subdivison evidence offered as to the distance between the courthouse and the districts visited by the defendant or his field deputies, by the ordinary and usual road of travel between these points. Also evidence offered as to the usual road of travel between said school districts and the nearest railroad station. Also evidence as to the distance by the nearest road usually, ordinarily, and necessarily traveled between the courthouse and points visited by the defendant and his field deputies.

One King, witness for the county, testified that he was clerk of school district No. 102, and was asked:

Q. Do you know what the distance is from school No. 2 by the ordinary and usual road of travel to the city of Minot?

Objected to on the ground and for the reason that the question assumes an ordinary and usual course of travel, and if accepted as the criterion in this case would limit the county superintendent to travel over this road that this witness concludes is the usual and ordinary mode of travel, and exclude him from making what at the time of the visit was a feasible route.

Sustained.

Further he was asked:

Q. In getting to the city of Minot, is it not a fact that practically all of the road from the nearest corner of your township in to Minot follows the section lines?

A. Yes, sir.

Q. Does that road following the section lines go by school No. 2? Objected to as incompetent, irrelevant, and immaterial, as having no probative force, and not tending to prove or disprove the county superintendent of schools has or has not traveled the number of miles claimed by him in the several bills filed here, and improper order of proof, and necessarily limits the superintendent to the use of one road to the school, whether the same was at the season feasible or not, or whether it was feasible in connection with his other work and it is not a proper criterion.

Sustained.

He was further asked:

Q. Do you know what the distance is from the corner of your township, the greatest distance from the city of Minot by the ordinary and usual route of travel to the city of Minot,—I mean thereby, the corner located the greatest distance from Minot being the southwest corner of the township?

Objected to as incompetent, irrelevant, and immaterial.
Sustained.

These and other similar assignments of error constitute one group.

It is conceded by defendant that the county can recover for any sum paid defendant unless the mileage was actually and necessarily traveled. The testimony of the witness King had a tendency to prove overcharges. He testifies that Minot was his trading point; was situated 16 or 17 miles distant, and the ordinary traffic went by these schoolhouses. The bills presented by the superintendent to the county for visiting this particular district were before the jury at the time. We have taken the trouble to summarize those visits. Beginning November 11, 1910, and ending December 19, 1912, a period of slightly over two years, we find it was visited upon the following dates and the following mileage charged:

| Date. | Mileage. |
|---|---|
| November 11, 1910 | 48 Miles. |
| May 1, 1911 (and one adjoining district) | 248 " |
| May 17, 1911 (and one adjoining district) | 272 " |
| June 8, 1911 | 254 " |
| June 9, 1911 | 246 " |
| June 19, 1911 | 44 " |
| June 23, 1911 | 230 " |
| June 27, 1911 | 244 " |
| August 2, 1911 (and one adjoining district) | 238 " |
| September 11, 1911 | 54 " |
| September 12, 1911 | 40 " |
| September 22, 1911 | 246 " |
| October 9, 1911 (and one adjoining district) | 298 " |
| October 31, 1911 (and one adjoining district) | 246 " |
| November 3, 1911 (and one adjoining district) | 250 " |
| November 6, 1911 (and one adjoining district) | 118 " |
| November 8, 1911 (and one adjoining district) | 106 " |
| December 8, 1911 | 246 " |
| December 11, 1911 | 246 " |
| May 6, 1912 | 246 " |
| June 4, 1912 | 44 " |
| August 29, 1912 | 38 " |
| September 2, 1912 (and one adjoining district) | 240 " |
| September 4, 1912 (and one adjoining district) | 96 " |
| September 6, 1912 (and one adjoining district | 244 " |
| September 13, 1912 (and one adjoining district) | 251 " |
| November 21, 1912 (and one adjoining district) | 250 " |
| November 26, 1912 | 36 " |

Date.                                                                    Mileage.
December 11, 1912 (and one adjoining district) .................... 248 Miles.
December 18, 1912 (and one adjoining district) .................... 264    "
December 19, 1912 ........................................... 72    "

—making a total of 5,703 miles traveled during the two and one-half years in visiting township 153, range 84, some 17 miles from Minot, which is situated in township 155, range 83. In this period defendant collected from Ward county for visiting the same, $570. During the same time the county offered to prove that defendant had an automobile in which he and his deputies were constantly riding. Plaintiff also offered to prove by the school registers, testimony of the teachers, directors, and pupils, that on many—if not all—of those visits the superintendent or his deputy came to the school in an automobile. The defendant had been obliged to admit, when confronted with the visitors' registers, that the visits made were not always given correctly in the bill filed with the county. In some instances being four or five days in error. He also was obliged to admit, when confronted with the registers, that the visits were not always made by the deputy named in the bill filed with the county. He was also obliged to admit that he had changed the mileage in the bills which had been returned to his office by the deputies, and had destroyed the original memoranda given to him by his deputy. Supplementing this testimony and those offers, plaintiff attempted to show the longest road ordinarily used by the people of that community in traveling from these schools to Minot, in order that the jury might find whether or not this mileage had in truth been made, or, if made at all, whether it had been necessarily made. It seems that a mere recital of this proposition would show its admissibility without argument. The rule is well settled that the more difficult a proposition, the greater leniency should be allowed in introducing evidence. In view of the admitted inaccuracies of the bills filed, it was very difficult to trace this mileage, especially at a time several years distant, and for this reason the trial court should have allowed the plaintiff much more latitude. Circumstantial evidence under those circumstances is admissible if it has fair bearing upon the issues. Plaintiff's attorney had a perfect right to show the distance from Minot to this district by these ordinary roads, and if he had been allowed to prove other matters improperly excluded would have made a very

creditable showing of overcharge in this district. If, as hinted in defendant's objection, road conditions, absence from home of the directors, and similar circumstances might have increased this mileage, those facts could readily be shown either· upon cross-examination of the witness King or by other witnesses. These matters are so peculiarly within the defendant's knowledge that it is not asking too much of him to explain to the jury any unusual circumstances attending those trips. Defendant had not arbitrary discretion in the matter of visiting these schools, and should have used the same discretion and judgment that he would have, had it been a private venture. The jury had the right to say whether, under all of the circumstances, thirty-one separate visits were needed to this district during twenty-five months. They had a right to say whether or not those visits had, in truth, been made. They had a right to find whether it was necessary that at least twenty of them should be made around by Drake. They had a right to say whether it was necessary that five distinct visits should be made in June, 1911, with a total mileage of 1,018 miles, or whether those visits should have been combined so as to save money for the taxpayers. They had a right to say whether or not it was necessary that visits should be made on the 8th and 9th of June of that year, or whether or not those visits were made; and, if made, whether defendant had a right to charge mileage back to Minot each night. They also have a right to say whether it was necessary to visit this district on the 3d, 6th, and 8th of November, 1911, charging mileage back each night. Upon another trial plaintiff will be allowed to show all of those circumstances having any fair relevancy to the subject. It was error to exclude this evidence.

(b) After his ineffectual attempt to show the distance from the various schools to Minot, appellant made the following offer of proof: "At this time the plaintiff offers to prove by the clerks of the school district of Ward county, by teachers and by the deputy county superintendents of Ward county, during the period covered by this action, the following facts: What the distance was from the city of Minot to the most remote corner of each school district in said district in Ward county during the period between August 1, 1910, and January 6, 1913, by the longest route necessarily, usually, and ordinarily traveled between such points. And also the distance from each schoolhouse in each of these districts to the nearest railroad station, and the distance from such rail-

road station to the most remote corner of each of said districts by the longest routes necessarily, usually, and ordinarily traveled between such points during the above-mentioned period. (2) And the plaintiff further offers in open court to prove by teachers and school officers that more than 300 visits have been made by the defendant and his deputies to the above schools and to school districts' numbers 94, 58, 122, 79, 53, 151, 149, 131, 123, 95, Douglas, Ryder, 85, 138, 120, 92, 111, 102, 106, 150, 130, 152. Directly from Minot overland to a specific district or place in the district, and returning overland, when the mileage charged and received by the defendant was figured by rail from Minot through Drake to such school district and returning by the same route; and to prove by these witnesses that the mileage so actually traveled was less than the mileage charged in each instance by from 110 to 120 miles, and that the said defendant has been overpaid by Ward county to that extent.

(3) "And the plaintiff in open court further offers to prove by the clerks of the school districts of Ward county, North Dakota, and the teachers thereof during the period covered by the action, that in certain and specific instances constituting the great majority of the trips for which charges have been made by the superintendent as shown in exhibits 1–35, inclusive, the longest route necessarily, usually, and ordinarily traveled between such school or school officer and the city of Minot is less than the mileage charged by the defendant in the said bills, by from 20 to 210 miles, and that, by reason of the said, defendant had been overpaid during the period covered by this action in the sum of $7,000."

(4) "The plaintiff in open court further offers to prove by the men who were deputy superintendents of Ward county during the period covered by this action, that in computing mileage which Ward county paid, as shown by exhibits 1–31 inclusive, each deputy figured the mileage to such school or school officer visited by him at a certain invariable distance, and irrespective of the route actually followed on such visit, and that in a certain number of trips it was figured by section lines."

(5) "The plaintiff in open court further offers to prove by the clerks of the school district of Ward county and the teachers thereof, during the period covered by this action, that, without loss to the efficiency of

the school administration of the county, the defendant or his deputies could have visited seven or more schools on each trip, before returning to the city of Minot, and that by traveling the distance from the school visited to the nearest railroad station or town and from there to other schools, computing the distance as above offered, that more than $6,000 in mileage would have been saved Ward county."

Paragraphs 1–3 and 5 of this offer were objected to upon many grounds, and the whole offer upon grounds among which is that it contains more than one distinct offer of proof, two of which were not objectionable to the defendant. The offer was repeated in several forms, and objection sustained each time until it finally was narrowed down to the following: "At this time the plaintiff in open court offers to prove by the men who were deputy superintendents of Ward county, during the period covered by this action, that in computing the mileage which Ward county paid, as shown by exhibits 1–31, inclusive, each deupty figured the mileage to such school or school officer visited by him at a certain, invariable distance, and irrespective of the route actually followed on such visit, and that on a certain number of trips it was figured by section lines." To this last offer there was no objection. For brevity we have excluded the offers as they were changed and submitted by the plaintiff. We will content ourselves, however, with saying that the first four paragraphs of the offer as made were not, to our mind, objectionable, and should have been allowed by the court. As already stated, the more difficult the task, the more lenient should be the rulings of the court, and not the more severe.

(c) Plaintiff attempted to introduce evidence showing that the school districts in Kenmare, Ryder, and Berthhold were special school districts during all or a part of the time for which the superinterdent received mileage for their inspection. This offer of proof was met with the objection that it was incompetent, irrelevant, and immaterial; that the rights of the plaintiff and the defendant with respect thereto were defined by statute. This objection was sustained. We think the rejection of the offer was error, regardless of whether the superintendent had some business in those districts or not. Conceding, without deciding, that defendant had certain duties connected with these districts, which necessitated visits thereto, yet the fact that there are special districts employing superintendents of their own, partially at least under

local supervision, should be taken into consideration in determining whether or not any unnecessary visits were made to those districts.

(d) While defendant was upon the stand upon cross-examination under the statute, he was asked to explain instructions given his deputies relative to the mileage that they should charge.

After answering certain questions he was asked:

How would you figure the mileage if you had no automobile?

A. Figure by rail mostly, and livery drives out to towns that are close to rail.

Q. Now, then, the question is in going to a certain school in a certain district, how, according to your instructions to the deputies, would they figure the mileage?

Objected to as calling for a conclusion of the witness, incompetent, irrelevant, and immaterial.

The Court: It seems he has answered it about as nearly as he can. An examination of the evidence shows that the witness had not answered the question excepting to say that his instructions were to charge the mileage just the same as though defendant had not owned an automobile. What the county desired to know was whether or not the deputies were instructed to charge constructive mileage? This the defendant not only did not answer, but evidently was evading when the court stopped the examination and told the jury that the witness had answered the question. This error was highly prejudicial.

(e) The deputy Peterson, while on the stand as a witness for the plaintiff, was asked whether or not by reference to a map showing the school districts of Ward county, he could testify as to the route taken by him upon a certain date where mileage had been charged around by Drake and Ryder. The question was:

Examining exhibit 29 and refreshing recollection from an examination of that, could you tell as to what district was visited on that trip?

Defendant's counsel thereupon asked him as follows:

Any opinion you would have in regard to it would be gathered entirely from the exhibit, would it not?

A. I could tell better after looking at it.

Q. Look at it.

Q. You would have no independent recollection as to what visit it

was, and you would have no impression except what is conveyed by the piece of paper, isn't that the truth?

A. I don't remember it.

Q. You would have no independent recollection of it, would you?

A. No, sir.

Defendant's counsel then objected to the testimony, because he had no independent recollection of the matter, and it is incompetent, irrelevant, and immaterial for that reason.

Sustained.

If this witness, by refreshing his memory from a map and the bills filed with the county, could testify that the trip was, in fact, made overland by the short mileage, it would tend in a measure to show that the county had been defrauded, and it, therefore, was relevant. Its exclusion was error.

(f) While the witness Peterson was on the stand he was asked regarding instructions given to him by the defendant relative to the manner in which mileage should be charged. He was asked:

Q. Were you instructed by the county superintendent, the defendant in this case, when visiting in the southern part of this county, to figure the mileage by railroad through Drake to some town on the Drake-Plaza branch of the Soo and from there up to the school visited and returning by the same route whether you traveled by land or by rail?

A. Well, what schools was that—the schools of the vicinity of that branch?

Q. Yes, amplify the question I would say to the schools that were nearer to some town on that branch than they were to Minot or to any town on the main line on the Great Northern or the main line of the Soo southeast.

A. Yes.

Q. And did you, in figuring this mileage which you submitted to the superintendent, follow those instructions?

A. I did.

Q. A great many of the trips made into districts 122, 92, . . .

Douglas, . . . Ryder . . . were made by automobile directly from Minot were they not?

Objected to as incompetent, irrelevant, and immaterial, not admissible under the pleadings or the bill of particulars, not tending to prove or disprove any of the allegations of the complaint or answer. Sustained.

We can see no theory upon which the objection to this question was sustained. This witness was the identical man for whose travel an enormous bill had been presented to the county. A fair inference from the mileage charged was that he had traveled from Minot to Drake, from Drake to Ryder, and from Ryder out into the country. When he was asked whether or not upon these trips he had gone overland from Minot he was not allowed to answer. This error is prejudicial. Again the same witness is asked: "Now, then, from among the visits made by you between August 1, 1910, and January 6, 1913, and for which such memorandum or record was handed by you to Mr. Warren, do you at this time recollect one or more trips that were made directly across the country from Minot by automobile, by you into the territory or into the district we have just enumerated?"

Objected to as incompetent, irrelevant, and immaterial, having no probative force, not within the issues or the bill of particulars, and for the reason the witness has heretofore in this examination identified his trip from the original bill and testified thereon.

Sustained.

The exclusion of this testimony is also reversible error.

(g) While the chauffeur was upon the stand, as hereinafter mentioned, he testified that during the years 1911 and 1912 he had been employed practically all of the time by the defendant in driving an automobile. He was asked:

Q. Now in making those trips did you occasionally, or did you at times, have two or three of the office force; that is, the superintendent and his deputies in the automobile with you, taking them out to schoolhouses or school officers?

Objected to as incompetent, irrelevant, and immaterial, already having been testified that that was the mode of visiting schools.

Sustained.

Again he was asked:

Q. During the time you were so employed, you were using the automobile practically every day, were you not?

Objected to as leading and suggestive, putting the words in the witness's mouth, not calling for a statement of fact.

Sustained.

Q. How much of the time approximately was employed, that is of each week or month in making trips from Minot to the schools of the county?

Objected to as calling for the conclusion of the witness, not referring to any specific trip, not tending to prove or disprove any of the allegations of the complaint.

Sustained.

Q. Were some of the trips made by you with the automobile taking the superintendent or his deputies to the schools and school districts and school officers of Ward county made into the southern part of the county being the territory around or north of Max and around Douglas, Ryder, and Makoti?

Objected to as incompetent, irrelevant, and immaterial, indefinite.

Sustained.

Again he was asked:

Q. How many trips can you recollect now that were made during that time to Ryder?

A. I have not the slightest idea.

Q. There were a great many?

Objected to as incompetent, irrelevant, and immaterial, indefinite, not tending to prove or disprove any of the allegations of the complaint or furnish any basis upon which a verdict could be rendered one way or the other.

Sustained.

Again:

Q. During the time you were driving the car in the summer or fall of 1912, with the exception of the period between October 14th, and October 25th, the roads of Ward county were they in good shape?

Objected to as leading and suggestive, putting the words in the witness's mouth, not calling for a statement of fact by the witness, not

tending to prove or disprove any of the allegations of the complaint, and calling for a conclusion of the witness.

Sustained.

The exclusion of this testimony was error. The county was trying to prove that during the time that defendant presented bills showing mileage into this country by the long route by Drake and Ryder and some constructive mileage, he and his deputies were, in fact, traveling every day in an automobile and that the roads were good. This was material and should have been received.

(h) It is also error in the trial court to sustain objections asked of the defendant as to the whereabouts of his temporary records. If, as conceded by the defendant, the bills presented to the county were inaccurate in that they did not always show the true date when the visit was made, nor the name of the deputy making it, nor always the month in which it was made, and that after the commencement of this action much memoranda were destroyed by the defendant, the jury would have the right to take the loss of the records into consideration in determining whether or not fraudulent charges had been made. Upon another trial this evidence must be received. We have not covered all of the questions raised by appellant upon the admission of testimony, nor do we think it necessary to mention any more. Those given above, if fairly followed upon a new trial, will dispose of all of the questions and allow plaintiff to prove his case by such evidence as is at this time procurable.

(2) The next question arising upon the record is whether or not the trial court erred in directing a verdict at the close of the testimony in favor of the defendant upon the first cause of action. In view of the fact that so much testimony was improperly rejected, a decision of this question is more or less academic, but we have no hesitancy in saying that the evidence offered and received at the former trial was sufficient to take the case to the jury. It must be remembered that, to constitute a legal charge against the county, the mileage must have not only been made, but must have been necessarily made, and whether there was a necessity for the trips with which the county had been charged was a question of fact for the jury. While the burden of proof is upon Ward county to show that no necessity existed for much of this mileage, yet this could be proved by circumstantial evidence, and much of that existed in the case. The bills themselves offered in evidence show that for

32 N. D.—7.

slightly over thirty months a charge was made for 176,375 miles. The bills themselves also show that in many instances districts lying within a few miles of Minot were visited not once, but many times, and mileage charged from Minot to Drake, Drake to—say—Max, Ryder, or Plaza, and then by team out to the district. The mere fact of the existence of the bills in this condition was a circumstance of sufficient force to go to the jury as proving that the mileage had not, in fact, been made in the manner for which the charge was made. Taken in connection with the testimony of the defendant himself and his deputies, as to the manner in which those charges were made, it presents enough evidence to sustain a verdict in plaintiff's favor. In this connection we will quote briefly from defendant's testimony as to the manner in which those charges were made:

Q. There were some of these trips into those districts already enumerated where the trips were made by automobile across the country, where you figured mileage from Minot to Drake, Drake to some town on the Drake-Plaza line on the Soo and to the school and returning by the same route?

A. Yes.

Q. However, on some of the trips made into that series of districts by automobile across the country, you figured the constructive mileage around by Drake with railroad mileage?

A. I have just said so.

Q. And it is true is it?

A. I think so.

Again he was asked regarding the instructions that he had given to his deputies as to how they should charge mileage against the county:

Q. There is one matter you partly covered in which I did not get clear, and that is in regard to the instructions given by you to your deputies as to figuring the rail mileage.

Q. That is what we are asking you.

A. All right. I told the deputies to charge mileage, that is the third repetition. I answered the same question before, and that is to charge the mileage the same as though I did not own an automobile. The same

as though we were in Minot and took a visit by livery and railroad, absolutely and exclusively.

.    .    .    .    .    .    .    .    .    .

Again he testifies:

Q. Have you not already testified that in some of those cases where the mileage was figured by Drake, you traveled across the country?

A. Yes.

Again he testifies:

Q. At the time the deputies reported to you the mileage covered on making a trip, and other items that you have already testified to, did you not also indicate on that memorandum the date on which the visit was made?

A. In nearly all cases.

Q. Why was it not then corrected so as to make these bills correct in that particular also?

A. Because it was not required. And it makes no difference in the school work and it wasn't anybody's business.

Again he testifies:

A. In connection with that, I want to correct an answer I made yesterday in regard to adding to the deputies' accounts. I was thinking the matter over, and I am of the opinion that when a trip was overlooked in the previous month—and there was those once in a while—I would put it in with another trip made by that man the next month, instead of making a separate item of it.

Q. What you claim now is that, instead of correcting the bill, that you would add it into another trip into the same district?

A. Not necessarily into the same district. Possibly, but not necessarily—might be added to the same district or some other district to make it appear that it was that month's business instead of the past month.

Defendant also testified to a trip made by himself personally as follows:

Q. On October 3, I find you personally made a combined visit to 62, which is Tatman township north of Minot, and to 53, which is Rushville, directly south of Minot, can you by an examination of the bill recollect by what means of conveyance that trip was made?

A. I cannot tell you how any of the trips were made.

Q. Do you have among the records of your office any record, note, or memoranda that would indicate in the case of any of these trips in exhibits 1–31, by what conveyance the trip was made?

A. There is absolutely no record as to how trips were made and the temporary record for my own guidance was made.

Q. Then what became of the temporary record?

A. Destroyed, the same as any other temporary record, thrown in the waste basket as of no further use.

Besides the testimony of the defendant himself, which — as we have said — was sufficient to sustain a judgment that much of the mileage had been unnecessarily traveled, or not traveled at all, there is the testimony of the deputies, from which we will quote briefly. Mr. Peterson testified that he was one of the deputies:

Q. Were you instructed by the county superintendent, the defendant in this case, when visiting in the southern part of this county to figure the mileage by railroad through Drake to some town on the Drake-Plaza branch of the Soo, and from there up to the school visited and returning by the same route, whether you traveled by land or by rail?

A. Well, what schools was that—the schools of the vicinity of that branch?

Q. Yes, to amplify the question, I would say to the schools that were nearer to some town on that branch than they were to Minot or to any town on the main line of the Great Northern or the main line of the Soo southeast.

A. Yes.

Q. And did you in figuring this mileage, which you submitted to the superintendent, follow out these instructions?

A. I did.

Q. A great many of the trips made into districts 122 . . . etc. Douglas . . . Ryder . . . were made by automobile directly from Minot were they not?

Objected to as incompetent, irrelevant, and immaterial, not admissible under the pleadings or the bill of particulars, not tending to prove or disprove any of the allegations of the complaint or answer.

Sustained.

Q. In reference to school districts 62, 63, 144, and northeast school of 36, were you instructed by the superintendent to charge mileage by rail by Granville to either Deering or Glenburn from there to the school and returning by the same route, whether you made the trip by automobile or otherwise?

A. As to that, in making a trip like that by rail if I went around to Deering and drove out, I would charge for it accordingly, and if I made the same trip by auto to the same school, I would put down the mileage as though it were made by rail, and from the closest railroad point.

Q. That was the rule followed as to the whole of Ward county, by rail to the closest railroad town and out to the school in figuring the mileage?

A. That was the rule I followed in putting down by mileage, possibly with some exceptions. I was trying to think of some exceptions, but I guess that rule holds good, I won't make any exception to it.

Q. Do you know whether that was the rule followed by Mr. Warren and the other deputies?

A. They could testify better as to that.

Q. I am asking whether you know, that was all?

A. I presume so.

Q. You have no actual knowledge of that?

(No response)

The testimony of the other deputies is very similar. Besides the above testimony of the superintendent and his deputies and the bills filed by him, there is the testimony regarding specific instances where the mileage was charged around by Drake when the visit to the school was made by a much shorter route from Minot. As one instance, we cite a trip made shortly before Thanksgiving, 1912.

Mr. Peterson, one of the deputies, testified:

Q. Who was with you at that time?

A. Wendt, Waller, Warren, and McEown.

Q. You were traveling by automobile?

A. Yes, sir.

Q. Where had you been?

A. We had been visiting some schools beyond there.

Q. Do you remember in what district?

A. I don't remember.

Q. Examining exhibit 29 (defendant's bill to the county for November, 1912), and refreshing your recollection from an examination of that, could you tell as to what district was visited on that trip?

.　　.　　.　　.　　.　　.　　.　　.　　.　　.

(Objection sustained to this evidence)

Q. In coming to Mr. Hillesland's place . . . do you now remember your last stop prior to coming to his place?

A. We came from the south.

Q. Did the four of you on that day visit. different schools, or did you all visit the same school?

A. Well, we did not visit the same school; no, sir.

Q. You visited different schools?

A. I visited a school myself.

Q. While you were visiting that school were the others there waiting for you or gone on?

A. They had gone on.

.　　.　　.　　.　　.　　.　　.　　.　　.　　.

Q. You may examine exhibit 40, and state whether from that book you could ascertain—

A. That was made the day before Thanksgiving.

.　　.　　.　　.　　.　　.　　.　　.　　.　　.

Q. From what place did you start in your automobile on which these visits were made?

A. We started from Minot.

Q. The superintendent and each one of the deputies visited one school?

A. I answered that before; I said I visited one school and the others went on.

Q. You went to the first one and were dropped from the automobile, were you?

A. I don't remember that.

Q. And then you returned by automobile or stopped at Hillesland's place on your return?

A. Yes.

This testimony is corroborated by the other deputies and by Mr. Hillesland. With this in mind we take up the bills for said dates, and find that on the 21st of November defendant presented to the county

a bill for Peterson visiting district 152, mileage 292 miles. On the same date for Waller visiting district 92, 254 miles; and for Wendt visiting district 102 and 149, 250 miles, and for the defendant one day previous for visiting district 73, 80 miles. The evidence of the school register, and of the other deputies, and of the chauffeur, taken together, was sufficient to justify the jury in finding, if it had been submitted to them, that this particular trip was made by the four of them together in an automobile from Minot, covering mileage something less than 50 miles and return, and that a charge was made for traveling 876 miles. Upon this incident alone a jury would be amply justified in finding defendant had been overpaid at least $75. As we have said, we give this single instance. There are others in the record. More than this, there is ample evidence in the record from more than a dozen witnesses that, during this period, defendant and his deputies were constantly traveling by automobile visiting four, five, or six schools a day.

The chauffeur McEown testifies that he had been employed by de-defendant in 1911 and 1912, and had driven to all parts of the county with the superintendent and his deputies. He was asked:

Q. In making those trips that you were driving the automobile during 1911 and 1912, did you at times leave either the superintendent or one of the deputies at various schoolhouses around the county?

A. I did.

Q. At the time of making these trips, did you make a record of the trips so made?

A. I did not.

Q. During the summer of 1911 and 1912, you were employed in the capacity of driver practically all of the summer of those two years?

A. Yes, practically.

The bills presented by defendant to the county are in evidence, and show that almost without exception charges were made by the longest possible mileage in visiting the districts lying between Minot and Plaza.

It seems to be the theory of the defendant that, unless the question regarding excessive or unnecessary mileage excludes every possibility of the defendant's innocence, that it should be rejected. This rule, if enforced, would exclude every iota of evidence in existence. As already

stated, the county had a right to show all of the circumstances surrounding defendant's work. They had a right to show the distance to the various schools, the conditions of the roads, the fact that defendant and his deputies were in daily use of an automobile, that there were inconsistencies in the bills rendered, that there was a failure of the defendant to keep proper books and memoranda, or that he had destroyed such memoranda, if it had once existed, that the bills filed were not properly itemized to be readily investigated by the county, that the records of the school districts did not show some of the visits for which charges were made. In fact, the county should be allowed to prove all of these various circumstances which might, taken together, prove conclusively that overcharges were made. The fact that no question could be broad enough to include all of these items is no reason why the questions should be shut out one at a time. Even after the exclusion of most of the testimony offered, there was nevertheless enough evidence upon which the jury might have found for the plaintiff in some sum. In paragraph 1 of this opinion we have given an itemized statement of mileage charged against school district No. 102. That district was selected because it was the one in which the witness King resided. In order that defendant's conduct should not be judged by one district alone, we have selected at random over the territory between Minot and the Drake-Plaza line fifteen other districts, and give the mileage charged in each instance.

| No. of District | Miles from Minot (Average Section Line) | Mileage charged during thirty months. |
|---|---|---|
| 53 | 30 | 10,581 |
| 79 | 25 | 9,727 |
| 149 | 20 | 7,771 |
| 111 | 32 | 7,067 |
| 92 | 30 | 6,985 |
| 150 | 25 | 6,578 |
| 120 | 28 | 6,308 |
| 152 | 25 | 6,088 |
| 95 | 28 | 5,854 |
| 85 | 36 | 5,683 |
| 106 | 20 | 5,633 |
| 122 | 30 | 5,544 |
| 138 | | 5,430 |
| 123 | 16 | 5,047 |
| 130 | 20 | 3,010 |

This mileage was collected from the county in a period of two and one-half years. We might add that, in the compilation, this court was unable to find among the files one of the bills against the county, so that the figures given in all instances are smaller than those for which the county has actually paid.

The county expresses its willingness to pay to the defendant for every mile which he has actually and necessarily traveled, and admits that the burden of proof is upon the plaintiff to show overcharges. Notwithstanding this burden of proof, we believe the evidence which we have above outlined should have been submitted to the jury, and that the jury would be justified in finding from the distances given by residents of the district, the mileage actually and necessarily traveled, and, under proper instructions from the trial court, render judgment in favor of the county for the balance.

(3) In view of this decision it is unnecessary to determine whether or not the costs were properly assessed below, as they all must be ultimately taxed against the defendant. Judgment of the trial court is reversed, and the case remanded for further proceedings.

Goss, J., not sitting.